The next case, number 22-1226, Brendan Hoover v. The Hyatt Corporation et al. Attorney John Mangones, please introduce yourself on the record to begin. Good morning, John Mangones, on behalf of the Plaintiff Appellant, Brendan Hoover. Good morning. If it pleases the Court, I'd like to reserve two minutes for rebuttal. You may. Thank you. This is a case in which my client, Brendan Hoover, was struck in the head by an elevator gate at the Hyatt Hotel while performing his job, causing him lasting brain injuries that continue to this day. Plaintiffs filed a negligence claim in the Federal District Court of Massachusetts, which subsequently granted summary judgment in favor of the defendants without a written order of its decision. Because there was a genuine dispute of material fact as to both the existence of a defect and notice of that defect, the order granting summary judgment should be reversed and this case should be remanded for trial. Hoover presented an expert report and testimony from an unquestionably qualified elevator expert that the elevator was defective because the safety edge on the elevator gate was worn out, had insufficient rubber, and was incapable of performing its sole function, which was to prevent the gate from injuring a passenger. This expert evidence alone was sufficient to create a dispute of material fact as to the existence of a defect. The defendants tried to strike plaintiff's expert evidence on the record from the summary judgment record with a separate motion under the Dobear standard, but they didn't succeed. The court expressly accepted the Ahern Report testimony as part of the summary judgment record. Defendants therefore cannot argue, as they want to, that plaintiff's negligence claim fails due to the lack of an expert evidence. They are left to argue that plaintiff's expert evidence is insufficient to even create a genuine dispute of material fact. Counsel, let me ask you, you have the red brief there. Could you turn to page 32? Do you have your opponent's brief there? Let me just read this to you. This is on the issue that the expert was able to testify to the damaged astragal, if that's the correct term. And this is what the brief says. This is from the deposition of the expert. You're not testifying that it had visible damage, correct? No, it may have. But you don't have any evidence that it was damaged, correct? It could have been damaged. There is a cable that runs through it that may have been broken. But you don't have any evidence to that effect, correct? No, because I can't see inside that rubber astragal. What do you do with that kind of testimony from the expert that he really can't say it was damaged? And that seems to be the heart of the case. But that wasn't the defect that caused the accident. What the expert was testifying to, and he is a professional expert to some degree, he's mostly an elevator person, but we're not claiming that there was a defect inside of the astragal. So the astragal is a rubber component and the full safety edge is both the rubber component and then the wire inside the rubber component that causes the reversal. And there's no allegation that there was a problem or a defect of the wire component inside of the astragal. The defect was the rubber piece itself. And at other parts in the deposition cited to... What about the rubber piece? What is your expert saying is the precise nature of the defect of the rubber piece? Too small. It's too worn out. And what my expert says is that it's 1.2... He looks at the video and says, that's the smallest amount of rubber I've ever seen on an astragal. It's a separate rubber piece that can be replaced independently. Does he say how big it should have been? Yeah, he says it should be four inches. Where does that come from, that standard? He's the expert. There's no code standard applicable to the safety edge. So the standard of care has to be proven through expert evidence. And he's an expert. That comes from his experience and his 30 years in this profession. There isn't going to be a standard that you can look to in the Washington State Elevator Code as to how big the rubber should be. It's a matter of experience. And what the expert said is it's worn down. And when it's worn down, you need to replace it. And he says it should be at least four inches. And there's complaints about the manner in which the expert assesses, but their expert actually measured the rubber component and found it to be 1.25 inches. And that's in their expert affidavit, R091 paragraph 33. We don't need two people to measure the length of the rubber on the astragal. So my expert looks at the video and says that can't be more than 1.5 inches of rubber. It should be four inches to be safe. Does he say that in my professional experience and based upon the thousands of elevators I've inspected over the years, that there is a standard in the industry for four inches? I'm just trying to figure out where does the four inches come from? He says it should be four inches. It should be at least four inches to be safe in his deposition testimony. Now he's less... What's the basis of the four? His basis is looking at rubber components on a safety edge for years and years and years. But does he say that all of the elevators I've inspected over the year have four inches? I don't know that he... He doesn't say that in those words, but what he does say as far as identifying the defect is that looking at visually at this rubber component, it is inadequate rubber. Looking at it, it is worn down and especially looking at the way it operates, and this is the key, it doesn't operate the way it is intended to do to prevent injury. It is supposed to collapse. It is supposed to have sufficient rubber. The rubber is what makes it safe. Now they want to argue that the only... Doesn't he say in Appendix 593 that the rubber on the video is smaller than I'm ever used to seeing? Exactly. It's ever used to seeing. And that's why, yes, the gate retracted indisputably, but it wasn't safe. It caused my client injury. He also says this is a component that's never supposed to hurt someone. That's the whole reason it's there, yet my client has had a concussion and had to be seeing doctors and had to miss work and has had seizures. That's not... The purpose of that rubber component is to make sure that when it does reverse on contact that it doesn't injure someone, and it did injure him. What do you do? There is a... He goes on at length in his report quoting an older and then a newer safety code for horizontal and vertical freight elevators. And as I... But he never says at any point that there's any code provision for the astragal. So what do we do with that? The other side's argument, as I understand it, is because there's a code and the code doesn't say anything about the astragal, you can't build a claim based on... The astragal could be one-tenth of an inch because there's no code provision. Well, I did address that in the reply brief that the case law is that, first of all, code is not... You can't defeat a negligence claim by saying that other elements of your elevator that are not an issue or claim to be the cause of the accident are sufficient or not defective. It just seems odd that there would be a safety code that is obviously designed to preventing injury from people who aren't used to using freight elevators that then doesn't say anything. There may be. It's subtle and I wrote it in my reply brief and it's not something my expert testifies to specifically, but in the reply brief, it talks about how if you don't have the safety edge, you're allowed not to have the safety edge as long as it retracts without 2.5 foot pounds when contacting an object. But the expert didn't testify. He testified... Well, the expert says that it should be no more than 30 foot pounds. So the safety code alludes to a standard saying you don't need this device at all if it's not going to hit more than 2.5 foot pounds. The expert says 30 foot pounds is within a safe range, which is the range that you can be hit by a door in terms of other parts of the safety code. Thank you. Thank you, counsel. At this time, would Attorney Zach Rzewski please introduce himself on the record to begin? Good morning. May it please the court, I'm Steve Zach Rzewski for the defendant appellee, Otis Elevator Company. Good morning. The plaintiff claims that the freight elevator's gate descended and struck him while he was trying to push an equipment case, which had gotten stuck out of the elevator. Based on the plaintiff's own testimony, he and the equipment case were in the elevator's entryway for approximately one minute. The gate began to close approximately five or ten seconds after its audible alarm sounded. Then it reopened after it made contact with the plaintiff. The gate was equipped with three safety devices, an infrared sensor to detect obstructions in its path, a loud audible alarm that would sound when the gate was about to descend, and a rubber- Counsel, you suggest in your brief, well, I guess it's an argument that you made below that the plaintiff himself could have been responsible for what happened to him. How could that be? How could he have been responsible for what happened here? For failing to get out of the way of the gate after the audible alarm sounded. But that's not the basis on which we were seeking summary judgment. That's your- that is the sum and substance of your argument of what he did wrong? He just should have gotten out of the way? The sum and substance of our argument is that the elevator was permitted- the gate was permitted to close with the plaintiff in its path when the elevator gate timed out after he was obstructing the entryway. Well, the theory of the rubber safety strip is that, I mean, it's like another safety element, that even if somebody doesn't get out of the way, it's designed to prevent injury, right? That's right, Your Honor, and that's the third safety component that I was just about to discuss, the rubber astragal, or safety edge, as it's been called in this case. This elevator was inspected by the state of Washington- But it did injure him. You're saying that it was designed not to injure someone who didn't get out of the way, but he was injured. So, the fact of an injury or accident alone does not establish liability in these elevator cases under a clear line of Massachusetts precedent. The rubber astragal was meant to serve the function of causing the elevator gate to reopen upon contact with an obstruction, and the plaintiff's own expert, Paul Ahern, testified very clearly on pages 100 and 101 of his deposition that he did not have any issue with the length of time that the gate took to retract once the safety edge made contact with an equipment case that was shown in the video that he was looking at. That video was his only physical observation of the elevator, which he never inspected in person. So, their own expert said there was no issue- Retraction that they're complaining about is the edge itself not being cushioned enough to prevent injury. And I think that's right, Your Honor. I think that's what I've gathered from the argument here, is that they're now trying to pivot to a theory that the edge should have acted as a bumper of some type or a force absorption device. I think they're saying that it would have absorbed force, but not just like a pillow that would protect the user, but that would trigger the wire to trigger the reversal of the elevator. So, it's not just a cushion, as I understand their theory. It's meant to do exactly what Your Honor just described, to trigger the gate to reopen, which is exactly what it did. Their expert- But you want to trigger it to reopen. It's not going to happen spontaneously. You can't. Something's moving in motion. There's going to be some period of deceleration. And so, how thick that is, is how much room it still has to go before it stops. So, it's undisputed that their expert testified there was no issue with the amount of time that it took for the gate to reopen once the AstroGolf made contact with the equipment case that he saw in the video of the gate. As for- It's already done the damage. It doesn't matter how quickly it goes up. I mean, if it struck him with considerable force, and then it goes up, it's kind of too late. Isn't it? So, to the issue of force, Your Honor, that's very important. Mr. Ahern, the plaintiff's expert, testified at pages 37, 59, 63, and 113 of his deposition that he did not and could not know the gate's closing force. So, there's not an opinion in this case or any evidence that the gate was closing with excessive force or more force than is permitted by the code. What the applicable elevator code requires, I believe Your Honor asked questions about the code in the plaintiff's argument, what the code governs are two things. For a vertically- What the elevator did is it struck him with enough force to injure him. And the edge is supposed to be the safety device coupled with the coil in the middle to strike him only with enough force so that it could safely recoil without injuring him. So, I think we can all agree it would be impossible for the gate to make contact with an obstruction with no force. So, the question becomes, did the gate close with more force than it was permitted to by the applicable standard, thereby constituting a defect? And the answer is that there's no evidence at all that it closed with excessive force. The code requires and limits the gate's closing speed in feet per second. Speed obviously is one of the major variables that affects force. There's no evidence that the gate closed with excessive speed. In fact, it did not. Both the plaintiff's expert and the defendant's expert, Mark Hollinger, were in agreement that there was no issue at all with the gate's closing speed. Suppose we have the exact same case, but there was no astragal at all. Would you be entitled to summary judgment? If there was no- I suppose, okay, there would be an issue there about whether the lack of an astragal or a rubber safety edge constituted a defect. Sure, same case, but there's just zero astragal. We're not down to one inch versus four inches, no astragal at all. Would we still be entitled to summary judgment? If, as in this case, we were on no notice of any defect with the elevator- No, you knew there was no astragal. Your client was built without an astragal. I'm not sure if that's permitted by the code. Because it seems to me it would be highly unusual that there would be no case if there were no astragal. If that's correct, that's why I'm asking the question, then we're left to, okay, well, what type of astragal do you need? Is one-tenth of an inch? Probably not. How do we know that? Well, one of the ways we know it is we look up and see what the code says about the size of the astragal, but as I understand it, the code doesn't say anything about the size of an astragal. I think the suggestion on the other side is the way courts and juries have traditionally answered that question is they turn to somebody who's been working in the industry for 30 years, seen hundreds of thousands of astragals, and says, never seen one this short. You need it. Isn't that the way we traditionally resolve a personal injury case of negligence? Not exactly the way that the plaintiff's expert has attempted to do it. When he says that, first of all, he said that on pages 36, 99, 157, and 159 of his deposition, he did not know how large the rubber was, and he also admitted he was not aware of any standard governing its size, whether a code provision or a manufacturer's specification. But he said elsewhere it was 1.5 or 1.7 inches. And there's no foundation at all for his statement that it should have been 4 inches or 2. Counsel, why isn't there a genuine issue of material fact here? I mean, the judge did not exclude this expert testimony. Could have, but didn't. It does refer to him as a so-called expert, but he does not exclude his testimony. So what you have is he says 4 inches, the rubber safety strip should have been 4 inches. I've never seen one that was 1 inch, 1.5 inch. It looks damaged to me. On the other side, you say, well, there was an inspection done a month before the accident, no defects identified, several days after the accident, another inspection by state authorities, no defect. So you have a dispute about whether that safety strip served the function that it was from a serious injury. Why don't we have a genuine issue of material fact just on those competing contentions? May I respond to just this question, Your Honor? Of course. Thank you. The reason that we don't is because the plaintiff's expert, whose testimony the court accepted for the purposes of summary judgment, was obviously guesstimating about his statement that the astragal should have been 4 inches. He never testified or stated that he ever measured an astragal before. How many times he specifically looked at the size of a rubber safety edge on another elevator he worked on. He could have done any number of things, including looking at a different version or a comparable code provision regarding astragals, or looking at a manufacturer's specifications of how large the astragal is. He never explains with that. He just asserts that 4 inches is what it should be, but he never explains where that standard comes from. It's pure ipsy-dixy. If he looked at the manufacturer's specifications for astragals, he would see that he is wrong. That's not evidence. That's their burden to prove. It's their burden to come forward with an issue of material fact. The court didn't help us very much because it didn't write a decision, but it just says it's too speculative on the part of your expert to allow the case to go forward. That's what was speculative, that 4 inches should have been the width of the safety edge. Is that what was too speculative? Not only that, when you combine it with all of the plaintiff's experts' other testimony that he didn't know how old the safety edge was or when it should have been replaced, he couldn't identify any necessary maintenance on the safety edge that was not completed. There was no notice of any prior issues at all regarding a door strike or the safety edge. Didn't he say it looked deteriorated? He testified clearly at the excerpt that Judge Lipez read in the plaintiff's argument that he did not see any visible damage whatsoever with the rubber. He did not inspect the elevator itself. He was going based on a seven-second video. I thought he said it looked crushed. He said the video shows completely crushed rubber. He was talking about when the, in that deposition excerpt, he was talking about when the safety edge impacted the equipment case in the video, not when it's not impacting the safety case, the safety, the equipment case, which is when it would have been observed by anyone inspecting the elevator. Right. So it wasn't the point that it didn't rebound fast enough to keep the entire 1.5-inch astragal from being completely crushed, i.e. the head would have come in contact with essentially the resistance force of the door. No, again, he testified that there was no issue at all with the length of time that it took the gate to reverse, which is the very purpose of the rubber astragal, to cause the gate to reverse, not to serve as a bumper or force absorption device. Thank you. Thank you, Your Honors. At this time, when Attorney Lopez introduced herself on the record to begin, she has a one-minute argument. Good morning, Your Honors. If it may please the Court, my name is Bridget Lopez. I'm here on behalf of the Hyatt Hotel Corporations. Good morning. We reiterate and join the arguments made by Otis as they equally apply to the Hyatt Corporation as the property owner. We suggest additionally that even if there were any dispute that there was evidence of a defect, which as I think the District Court properly ruled, that there's no adequate evidence that an alleged defect was apparent to anyone, but that separately Hyatt had no notice, excuse me, because they had no specialized expertise in the field of elevators. There's no dispute that there were known or reported issues with the safety edge at any point prior to this incident. And plaintiff's purported expert suggests that when viewing this second long video, he can see that the safety edge appeared not to work and was too small. It's basically this too small argument. And that's based on him, as Your Honors pointed out, on seeing thousands of freight elevators. So he relies on the fact that he has specialized knowledge to automatically be able to tell that this is one and a half versus two versus four inches and what is necessary. But he agrees he doesn't know what is necessary because there isn't a standard that applies to that. So I would just suggest that separately there's no notice to Hyatt and the ruling in the underlying court should be affirmed because they don't have specialized knowledge as to what the safety edge should do, how big it should be, or how it functions. Thank you. Thank you. Any questions for Mr. Pitt? Okay. Thank you. Thank you. At this time, Mr. Mangones, please reintroduce yourself back on the record to begin. You have a two-minute rebuttal. Thank you. John Mangones on behalf of the Plaintiff Appellant. I'd like to pick up, I believe that my brother counsel for Otis actually identified really where the dispute is in this case and I've alluded to it in my brief, which is that there's a battle of the experts as to whether the safety edge is supposed to be safe. Their expert and Otis consistently maintains that all the device needs to do is retract and go back up and that it's fulfilled its duty. My expert says the role of the safety edge is to prevent injury, which means this rubber component is supposed to blunt the force, absorb it so that it doesn't cause injury when it does retract. Now, that's a battle of an expert's for the jury to decide. As far as we've talked a lot about the four inches of the rubber component being something my expert testified to, which he did, there were additional statements my expert made which support that that safety edge was insufficient. He referred to it, as has been discussed, as the smallest he's ever seen in his career. When looking at it in the video, and he also says that the rubber should be sufficient as to never cause injury, which it did here. So those are facts. Counsel, just so it's, it's the smallest that's the problem because I think he concedes that he couldn't really tell whether it was damaged. I mean, when he suggests that he thinks it was damaged, but when pressed in the colloquy I referred to, he can't really say that it was damaged. Ultimately, he just says it's too small. Isn't that what he rests upon? It's just too thin? Again, when you look at that testimony in totality, he is talking about internal damage. We're talking about there's the reversal mechanism of the safety edge, and then there's the force blunting mechanism of the safety edge. And he's saying the reversal mechanism, I can't say that there's any damage because I can't look inside that, inside that astragal and see if that wire which has, you know, causes a reversal is damaged. So I don't know. I'm not here to talk about that. But that rubber component is worn out and it's, it's too small. And the reason it is too small is it gets, you know, he says if it gets worn down bouncing off of four wheel carts in people's heads, then it's going to wear out. And that when it wears out, you need to replace it. And you can just do that by slipping it in a new channel, taking a whole rubber component, putting it in the channel. So there are factual disputes in this case, I think is what is, is what's been elicited here that should be resolved by the jury, in which case summary judgment is not appropriate. Thank you. Thank you. Dan. Yes. Can we take a break? Yes. Thank you. That concludes argument in this case.